Good morning. May it please the court, my name is Kelly Schwartz. My partner Jeremy Sanders and I are supervised law students participating in Boston College Law School's Ninth Circuit Appellate Project. Boston College's Ninth Circuit? Wow! All the way across the country, huh? Yes. It's warmer here. Much warmer. Much warmer. We are appearing under the supervision of Professor Kari Hong, who is seated at council table. We represent Petitioner Roberto Lopez Valencia, whom we will refer to as Mr. Valencia. With leave of the court, I respectfully wish to reserve two minutes for my partner to provide rebuttal. There are three reasons why the BIA erred. First, under Rendon, a statute is indivisible if it contains multiple alternative means of violating the statute. This is exactly how California law describes the operation of its general theft statute, Section 484, which consolidates multiple forms of theft into one singular section. Section 484 includes larceny, trick, false pretenses, and embezzlement. As explained in the 2015 Vidana case, under Section 484, larceny and embezzlement are merely two ways of committing the single offense of theft. In Vidana, the defendant was convicted of both larceny and embezzlement, but the Court of Appeals struck one of the convictions because a defendant cannot be punished twice for the same conduct. So under Section 484, all of the enumerated offenses are not stand-alone crimes, but are different means of committing the unified crime of theft. That case now is up before the California Supreme Court? Yes, as far as we know, it is still good law. Well, I know it's good law now, but my question then would be should we wait for the California Supreme Court? Are they going to overrule Norwoods or change positions? How do we know what they might do? We cannot speculate as to what they'll do about the Vidana case. However, this Court should not wait because we do also still have the 2014 Robertson case, which very much supports our position. And as noted in that case, larceny and its progeny have a very unique history in the common law. When theft offenses were stand-alone crimes, there were too many technicalities whereby a thief could not be proven guilty. So in response, many states, including California, elected to consolidate the multiple forms of theft into one singular section. So for example, Robertson establishes that one cannot separate these four theft offenses from one another. How does a jury get instructed? Is the jury told they have to agree on how the theft was accomplished, or are they told that if one of you thinks that it was accomplished with aspiratation and another one thinks it was accomplished by embezzlement and another one thinks it was trick, that's okay as long as you unanimously agree that there was a theft on some basis? How is the jury instructed? So for example, in the Robertson case, the jury was instructed on larceny. However, the evidence supported only false pretenses. And the Court there explained that, quote, a theft conviction may be upheld as long as there is sufficient evidence under any theory of theft to support it. Was that a sufficiency of evidence case or a case on how the jury should be instructed? Well, they determined that even though the jury was instructed on larceny,  so as long as there is sufficient evidence under any theory of theft to support the conviction, even if the jury was not instructed on the relevant theory of theft. If we agree with you that 666 is, number one, overbroad, and number two, that it's not divisible under de comp, that gets your client off the hook on that statute. Okay, but the BIA also referred to 11-550. It didn't do anything about that. But would our remedy be at that point to send it back to the BIA for reconsideration of the conviction under 11-550? So we argue that 484 is indivisible, and so that ends our case here. And I don't know the answer to that, but we'd be happy to file a supplemental brief. I mean, basically what we've got, your point, I think, is about the 666. And section 484, yes. Right, right, the theft issue. But the reality is it's overbroad. We've got case law on that, so the question is what does a comp do, whether it's divisible, and my colleague is asking about how the jury instructions go. What does the jury have to find so we can determine whether it's divisible? If you're right, the BIA referred to two different statutes that would prohibit your client from getting relief. One is the one you're arguing. The other one is 11-550, which it made note of but did not analyze. So my question to you is if we agree with you, isn't the remedy that we say you went about the statute, but we're sending it back to the BIA so it can reconsider whether it's going to act under 11-550 and fill in the blanks there? Yes, we are asking this court to decide on the merits regarding divisibility. So basically you're asking us to grant the petition as to the 666, which is the only issue in front of our court. Yes. I don't understand why 666 rather than 484 is the issue. To me, 666 just looked like sentence enhancement. It doesn't address the conduct of the wrongdoer. 484 does, and it says you're guilty of the same crime regardless of whether you're committed by all these various, quite different common law larceny means. And I guess the desk camps, or however it's pronounced, issue is are those means or are they elements? And nobody knows. And Rendon tries to answer it. Is Rendon the end of the story? Does it control? Yes. This court denied a rehearing of Rendon. Yep. I think the mandate is issued in Rendon, hasn't it? Yes. And under Rendon, Section 484 is indivisible as they are means and not elements. And given Section 484's unique history and consolidation, it is difficult to imagine a statute that better fits Rendon. So if 484 is indivisible under Rendon, is that the end of the story? Under desk camps, we have to grant the petition? Yes. Section 484 is overbroad. It's difficult to imagine a statute that better fits Rendon's definition of indivisibility as one that has, quote, multiple alternative means of committing the crime, end quote. And third, Luna Magdaleno does not foreclose this issue for two reasons. It's not precedent in the Ninth Circuit. Unpublished decisions are not binding. They are persuasive. And second, it is not persuasive. The parties in Luna Magdaleno never briefed this issue. The opening brief does not cite to a single California state decision interpreting Section 484. And as Robertson explains, an information charging larceny can be upheld with evidence of fraud. And this is significant because even if Mr. Valencia was charged with larceny, he could have admitted to the facts of fraud and the court would have accepted his plea and convicted him of Section 484. Would you like to reserve the remaining time for your colleagues? Yes, Your Honor. May it please the Court, Manning Evans for the government. Regarding the divisibility issue, the government believes that the Cisneros case that we cite at page 11 of our supplemental brief is very supportive of our position here. That's a case involving an Oregon statute evading arrest either by fleeing in a car or fleeing on foot. I gather the government does concede that 666 is overbroad, right? So the only question is whether this is divisible under DECOMP. Well, yes. 484 covers several different forms of theft, having been consolidated in 1927 by the State of California. So it's overbroad. It is overbroad. I think it's very important in this case to recognize, though, that the complaint in this matter, and that's at page 682 of the record, I believe, is framed exactly as the complaint in the Rivera case was phrased. And Rivera did find the... Rivera's pre-death camps. That is correct, Your Honor. But I would point out that Cisneros is post-death camps. And Cisneros emphasizes that a separatory instruction on a particular theory was enough to say that the statute there was divisible. That's the Oregon case with the Oregon statute in Cisneros? Yes, Your Honor. Tell me why Rendon doesn't control. That's what really is troubling me. Well, Rendon, of course, didn't deal with 484. It dealt with a burglary statute. So we have a different statute here. The particular issues in Rendon focused on, if I remember, is that of the breaking and entering? But here we have several entirely different theories. They were separate crimes before they were consolidated by the state. And California repeatedly says that it's necessary to instruct the jury on the theory of theft in a particular case. It looked to me like the California cases were somewhat inconsistent on that. And I wasn't sure what the right way to read California law was on that. I agree, Your Honor. I think it's important in looking at the California cases to focus on whether or not they're talking about sufficiency of the evidence without talking about instructional error or whether or not they're talking about instructional error that's harmless. Those are very appellate-type issues. But they all say when it comes to trying these cases, you should instruct the jury on these specific theories. If it's an element, then you tell the jury, here are the elements that the government has to prove. Each of them has to be proved beyond a reasonable doubt. Yes, Your Honor. And if you've got a case that says, well, they didn't prove this beyond a reasonable doubt, but the proof was overwhelming on some other means of committing a theft, that means it's not an element. It's just a means. That is certainly an indication of that. I would point out, for example. Can I just ask on that? It seems to me that we have Rendon and that when you take that coupled with previous cases, you get the unanimity issue is really what seems to be the deciding factor. And we can spin out all kinds of things, but I'm having some trouble understanding why here the unanimity issue isn't what sinks the government's case, at least on the theft in the 484 and the 666. The law is what it is. This case is very unusual, I think, because the complaint is focused on one specific theory. There would have been no need for a unanimity instruction in this case because there weren't multiple theories alleged in the complaint. May I ask you about that? Because when we're looking at deciding whether something is divisible or indivisible, we're really not looking at the charging documents. And I'm sympathetic as to what happens here as a practical matter, but then I'm trying to figure out as a legal matter, does that matter? Yes, Your Honor. The government's position as expressed in Rendon and also in the Almanza case that remains pending is that in fact the record of conviction is relevant to identifying elements as the Supreme Court was using that term in these camps. The court appears to have rejected that theory in Rendon. So as matters stand now under Rendon, it is a much more legally based, focusing on state law, I think the dissent from the- Isn't that the essence of the modern-day categorical analysis? I mean, it's a mess, I grant you that. But the reality here is that under this statute, a jury could in effect convict the defendant in any number of different approaches that fall within the statute. It's not just a simple, here are the four elements, you find that unanimously and you're all set. It is really not divisible, is it, under Rendon? I think that different state laws are going to be, there will be differences among them. And I think that the theft defense in California is recognized as a very unusual statute. We've had Schnellenberger and Montoya, we've had a whole bunch of them. And it in fact does get back to state law. That's the problem. We've got the little engine that could. Every state whose laws we review, and it's not just limited to the Ninth Circuit, we have to go through and parse the language of these statutes, some of which are, from a result perspective, the government's not going to be happy with it. But the law is what the law is. I'm struggling with how this turns out to favor the government on this modified categorical analysis. Well, we have the Cisneros case that's at 763 Fed 3rd, 1236. That involves this Oregon statute where this court, it's a post-descamps decision, and it focuses on the need to provide a jury instruction with respect to the specific theory, whether it's fleeing on foot or fleeing by car. Now, that is a pre-Rendon decision. That is true, Your Honor. And it's under Oregon law where you may have different charging requirements than under California law where you're basically, because of this mess where they were worried about people were getting off unfairly, you don't have to make that kind of charge, right? When you have a California practice and a California statute that does differ, maybe you could address that. That's possible, Your Honor. I can only say that in terms of analogizing to Cisneros, which I think is a very important case for us here, the fact that a jury instruction is required for the specific theory supports our argument here where we're looking at the California jury instructions that require... But here, and I realize this is an old case, the Norwoods case, the Supreme Court said in that case, and I quote, the defendant could be found guilty of theft by one means or another. We'll skip. It is immaterial whether or not the jury agreed as to the technical pigeonhole in which the theft fell. Well, Your Honor, when they consolidated the statute in 1927, the aim was to get away from the technicalities, the technical differences. I agree with you on that. I mean, this used to be a great criminal law exam question for professors because it was easy to grade. It still is. There's so many ways. It's easy to grade or it's a good exam question. Both, probably. There are so many ways to commit larceny, and every time the English judges freed somebody from hanging because it wasn't quite the right sort of larceny, then another kind of larceny was spun out of that case, and California seems to have said it doesn't matter. So I tried to figure out what it means, whether Rendon controls, and I look at the cases. It's really hard to understand the California Supreme Court case in Williams, but it looks like the general understanding is what the California jury instructions and annotations say, and the annotations say if multiple theories of theft have been presented, the jury does not need to agree on which form of theft was committed. All the jury must agree on is that an unlawful taking of property occurred, and then there's a string cite, and it can be anything from embezzlement to jumping a cab fare to taking a camera off somebody's car seat and running away with it. If that's so, that makes it indivisible under desk camps and Rendon, just a straightforward application of desk camps. You don't even get to modified categorical. It's just something that's not capable of supporting generic theft. Help me out on this. What am I missing? Because obviously that's a problem for your argument. I will go back. But counsel, with respect, following up on Judge Kleinfeld's comment, I'm looking at California criminal jury instruction 1861. A portion of that says people have proved that the defendant committed theft under at least one theory, but all of you do not have to agree on the same theory. Isn't that the very point that the other instruction makes, which is that this isn't a divisible statute? Right. So if because of this difficult position, which seems that Rendon came to pass after much of the briefing and we've seen the supplemental letters, if we need to grant the petition on that issue, do you agree that it would go back to the BIA for consideration on the other statutory? Right. A live issue. Is it correct that under desk camps, if the statute is indivisible, then the court is not supposed to reach modified categorical approach? That's correct. Thank you.  Judge Kleinfeld. Which case was that? Which case? Robertson. They didn't have to. They didn't think. They thought 666 was enough. But if we're sending it back, then they can decide on an open record what they're going to do about the other statute. That's correct. Thank you. The case of Valencia versus Holder is submitted. I do recognize that in this case the law has been in huge flux since you first filed your briefs. And so with Robertson, DeKalb, Rendon, et cetera, we've had a flurry of 28 J letters, which we'll look at. I want to also thank Ms. Schwartz and Mr. Sanders for your pro bono participation and your supervisor, Ms. Hong. We appreciate, as I know that the government does, having the issues nicely and squarely presented by both sides. So we appreciate the Boston University's. Boston College. It says University of Boston there. Careful. B.C. The Boston Law School. B.C. For your participation. Thank you. Great, great, great job to you.
judges: Kleinfeld, McKeown, Smith